731 P.2d 1364

**Stan PATTERSON and Sue Patterson, his wife, Appellants,**

**v.**

**ENVIRONMENTAL IMPROVEMENT DIVISION of the State of New Mexico, Appellee.**

No. 8143.

Court of Appeals of New Mexico.

Dec. 30, 1986.

Kathleen M. Haynes, Clovis, for appellants.

Weldon L. Merritt, Div. Atty., Sp. Asst. Atty. Gen., Environmental Impr. Div., Santa Fe, for appellee.

## OPINION

HENDLEY, Chief Judge.

This administrative appeal has been pending on our docket and ready for submission since April of 1985. In August of 1986, upon the recommendation of, and with the assistance of the State Bar of New Mexico, which assistance is greatly appreciated, this Court adopted an experimental plan pursuant to which cases would be assigned to advisory committees of experienced attorneys. Pursuant to our order adopting the plan, once the advisory committee rendered an opinion, that opinion would be served on the parties with an order to show cause why the opinion should not be adopted as the opinion of the Court. The parties would then have the opportunity to submit response memoranda to the Court.

This case was submitted to an advisory committee and the parties were so notified. That committee rendered a unanimous opinion. The parties were notified of the opinion and of their right to submit response memoranda. No response memoranda have been filed and the time for such filing has expired. This Court has considered the transcript and briefs in this case, together with the opinion of the advisory committee. It is the decision of this Court that oral argument is unnecessary in this case and that the opinion of the advisory committee should be adopted in full as follows.

Stan and Sue Patterson (Pattersons), owners of the Snazzy Pig Restaurant in Clovis, New Mexico, appeal from a decision of the Environmental Improvement Division (EID) suspending the Pattersons' permit to operate a food service establishment. The decision of the EID is hereby affirmed.

The essential facts are not in dispute. The Pattersons have operated the Snazzy Pig Restaurant for several years. At least since 1981, the restaurant has been inspected periodically by EID employees pursuant to statutory authority empowering the EID to conduct inspections of food service establishments to determine compliance with applicable statutes and regulations designed to protect the public health. *See* NMSA 1978, § 25-1-8. On March 30, 1984, an inspection of the Snazzy Pig Restaurant occurred, and five violations of EID regulations governing food service establishments were discovered. The Pattersons have never challenged the validity of those findings. The next inspection of the restaurant occurred on September 12, 1984. At that inspection, twelve violations of EID regulations governing food service establishments were discovered, including repeat violations of each of the five regulations found to have been violated during the immediately preceding inspection of March 30, 1984.

On September 14, 1984, the EID duly notified the Pattersons that a hearing would be held on September 26, 1984, to determine whether cause existed to suspend the Pattersons' permit to operate the Snazzy Pig Restaurant. Prior to the scheduled date of the hearing, the Pattersons requested that the EID reinspect the restaurant. On September 17, 1984, the EID did conduct the requested reinspection and concluded that no violations of EID regulations then existed and that all violations discovered on September 12, 1984, had been corrected by September 17, 1984.

At the hearing on September 26, 1984, the Pattersons did not dispute the charge that the September 12, 1984, inspection of the Snazzy Pig Restaurant uncovered numerous violations of EID regulations. On September 29, 1984, the EID notified the Pattersons of the decision of the EID to suspend the Pattersons' permit until they submitted an acceptable written schedule of compliance efforts. The Pattersons suspended operation of the restaurant on October 1, 1984. By October 3, 1984, however, the Pattersons had submitted the required compliance schedule, a reinspection of the restaurant revealed no violations of regulations, and the EID notified the Pattersons that the suspension had been lifted.

■ On appeal, the Pattersons do not dispute the sufficiency of the evidence to support the hearing officer's findings that

numerous violations of EID regulations were discovered during the course of the EID inspection of September 12, 1984. Instead, they argue that the decision to suspend was not in accordance with law. *See* NMSA 1978, § 25–1–11(B)(2). The Pattersons assert that the suspension decision violated a then-applicable statute which provided that the Environmental Improvement Board should promulgate regulations for the revocation or suspension of permits for establishments that fail to comply with applicable statutes and regulations, but mandated that "[t]hese regulations would apply only when a violation has been discovered on an initial inspection and found to be uncorrected on a second inspection." NMSA 1978, § 25–1–7(C).[1]

The EID concedes that the statute precluded suspension unless there were two successive inspections disclosing a violation of the same regulation. The position of the EID is that the successive inspections of March 30, 1984, and September 12, 1984, satisfy the statutory criterion.

The Pattersons argue that the statutory requirement could only be met if the two inspections closest in time to the date set for the suspension hearing disclosed repeat violations of an applicable regulation. From this premise, the Pattersons argue that the only relevant inspections were the September 12, 1984, inspection and the inspection of September 17, 1984, at which the EID reported a score of 100 and found

that all violations presented on September 12, 1984, had been corrected by the time of the September 17, 1984, inspection.

We hold that the statutory language is met whenever two successive inspections reveal repeat violations and, thus, that the suspension order issued on September 29, 1984, was valid. This Court ruled in *Chalamidas v. Environmental Improvement Division*, 102 N.M. 63, 691 P.2d 64 (Ct.App. 1984), that the statutory language reflected a legislative intent "to require, prior to revocation, a finding that a violation has continued, uncorrected, on a second, consecutive inspection." We conclude that the Legislature did not intend to bar the EID from continuing with a suspension hearing and ruling merely because the permit holder requests, obtains, and passes a reinspection after notice of the suspension hearing is received, but prior to the date of the hearing.[2]

The purpose of the Food Service Sanitation Act is to protect the public health by enforcing regulations established "to assure that consumers are not exposed to adverse environmental health conditions arising out of the operations of food service establishments." NMSA 1978, § 25–1–3. It is in the public interest for the EID to agree to conduct an inspection of a restaurant which remains open during the interim between the inspections, giving rise to the notification of the hearing to suspend and the date of the hearing.[3] If the

1. The statute was amended in 1985. The statute now reads: "The board shall promulgate regulations for the revocation or suspension of permits for those food service establishments which fail to come into compliance with a provision of the Food Service Sanitation Act or regulation promulgated under it. *No permit shall be suspended or revoked under the provisions of this subsection unless there have been repeated violations of the same standard* and without first providing the operator of a food service establishment an opportunity for an agency hearing." N.M.Laws 1985, ch. 38, § 1(C); NMSA 1978, § 25–1–7(C) (Cum.Supp. 1985) (emphasis added).

2. The issue of whether the EID could institute suspension or revocation proceedings based on repeat violations that occurred in the distant past but which were followed by regularly

scheduled inspections in which no violations were found is not before us. We do not, therefore, have occasion to address the issue of whether, under circumstances not here present, the application of the doctrine of laches might preclude the EID from instituting suspension or revocation proceedings. *See Weinberg v. Commonwealth State Board of Examiners of Public Accountants*, 509 Pa. 143, 501 A.2d 239 (Pa. 1985). *See generally, City of Raton v. Vermejo Conservancy District*, 101 N.M. 95, 678 P.2d 1170 (1984).

3. The EID has the power to suspend a permit immediately, without a hearing, if an inspection demonstrates "a substantial danger of illness, serious physical harm or death to consumers." NMSA 1978, § 25–1–9. Such ex parte suspensions cannot continue beyond the time that a reinspection at the request of the food service

EID could grant a request for reinspection only at the risk that the suspension or revocation hearing must be dismissed if the restaurant passed the reinspection, the EID might be tempted to decline to grant requests for reinspection or to defer them until after the suspension hearing.[4] This Court declines to construe the statute in a manner which would be counterproductive to its stated purpose. *See, e.g., State v. Shafer*, 102 N.M. 629, 698 P.2d 902 (Ct. App.1985).

The order of the EID of September 29, 1984, suspending the permit issued to Stan and Sue Patterson for operation of the Snazzy Pig Restaurant is affirmed.

IT IS SO ORDERED.

This Court acknowledges the aid of Attorneys Mario E. Occhialino, Carl J. Butkus, and Thomas J. McBride in the preparation of this opinion. These attorneys constituted an advisory committee selected by the Chief Judge of this Court and this Court expresses its gratitude to these attorneys for volunteering for this experimental plan and for the quality of work submitted.

ALARID and MINZNER, JJ., concur.

---

operator discloses that the dangerous conditions no longer exist. In this case, the EID did not use the power provided by Section 9 to close the Snazzy Pig Restaurant prior to the hearing. Therefore, the provision requiring the EID to conduct a reinspection at the request of the food service operator was not applicable.

4. No statute or regulation compels the EID to conduct a reinspection of a restaurant pending a suspension hearing if the restaurant was not closed down without a hearing pursuant to NMSA 1978, § 25-1-9.