[No. 23522.    Department One.    April 15, 1932.]

AUGUST N. DALK *et al., Respondents,* v. VARICK INVESTMENT COMPANY *et al., Defendants,* SMITH-COURTNEY COMPANY *et al.,*
*Appellants.*[1]

*Stratton & Kane, Geo. G. Hannan, Lloyd R. Savage, Oliver Hulback, Ned Roney, Eugene F. Hooper,* and *Morris & Dubuar,* for appellants.

*Christopher Jacobsen,* for respondents.

[1]Reported in 10 P. (2d) 231.

HERMAN, J.—Plaintiffs, August N. Dalk and Annie Dalk, who are husband and wife, brought suit against the defendant Varick Investment Company to foreclose a second mortgage, subject to a first mortgage for $35,000, on real estate owned and mortgaged by defendant Varick Investment Company. Various other persons claiming interests in the property were also joined as parties defendant. The real estate involved in this litigation is described as follows: Lot 1, in block 47, of Supplementary Plat of Pontius Second Addition to Seattle, situated in the county of King, state of Washington.

The defendants who have appealed claimed interests in the property, but plaintiffs alleged that all such interests were inferior and subject to plaintiffs' second mortgage lien. At the trial, plaintiffs prayed for the foreclosure of their second mortgage, and the interveners and some of the parties defendant, under the allegations of their cross-complaints, proved their claims of lien and prayed for foreclosure of those liens. The trial court entered judgment against the defendant Varick Investment Company, foreclosing plaintiff's second mortgage, and establishing the claims of those cross-complaining defendants and interveners as liens upon the premises, subject and inferior to the second mortgage of plaintiffs. The lien claimants whose liens were foreclosed, subject to the second mortgage, and the amounts of such liens allowed by the trial court are as follows:

Interveners and cross-complainants: Rainier Electric Co., Inc., $290—lien for labor; Howard H. Riley, $2,198.26—lien for labor. Defendants and cross-complainants: A. H. Van Riper and wife, $637—lien for labor; Smith-Courtney Company, Inc., $1,583—lien for material; Strandberg & Robinson, $5,863.50—lien for material.

From such judgment adjudging the liens of the above mentioned interveners and defendants to be inferior and subject to plaintiffs' second mortgage, those defendants and interveners have appealed.

Respondents, during the month of April and until May 9, 1929, were the owners of the real property in question. During that time, appellant Howard H. Riley, an architect, interested his brother, J. M. Riley, Jr., in the possibilities of erecting an apartment house on the property. He drew preliminary plans, which were used as a basis for negotiations with respondents and the first mortgagee.

An agreement was entered into, whereby J. M. Riley, Jr., would organize a new corporation, the Varick Investment Company, which would purchase the lot from respondents for $15,750, and build thereon an apartment house. According to the agreement, respondents were to deed the lot to the corporation, which was to encumber the real estate by borrowing $35,000 on a first mortgage, pay to respondents $1,000 in cash, and deliver to respondents a note for $14,750, secured by a second mortgage on the lot.

The transactions contemplated by the agreement were carried out, but all the cost of labor and material on the building was not paid, and liens were filed by appellants, resulting in the judgment foreclosing liens in the amounts above set forth.

Appellants make a number of assignments of error, the substance of which is that the trial court erred in failing to hold that appellants' liens are prior and superior to respondents' second mortgage. We will first consider this claim of error as it applies to the liens of all appellants except Howard H. Riley.

These claims are either for material furnished after, or for labor the performance of which commenced subsequent to the time, respondents' second

mortgage was filed for record with the county auditor of King county, Washington. Appellants argue that the liens are prior to respondents' mortgage, because respondents required and obtained a positive agreement that the Varick Investment Company would build the apartment house, which agreement was made for respondents' benefit, and necessarily resulted in profit to them.

Referring to labor and material liens, Rem. Comp. Stat., § 1132, provides:

"The liens created by this chapter are preferred to any lien, mortgage or other encumbrance which may attach subsequently to the time of the commencement of the performance of the labor, or the furnishing of the materials for which the right of lien is given by this chapter, and are also preferred to any lien, mortgage or other encumbrance which may have attached previously to that time, and which was not filed or recorded so as to create constructive notice of the same prior to that time, and of which the lien claimant had no notice."

In support of their contention, appellants rely upon the case of *Mutual Savings & Loan Assn. v. Johnson,* 153 Wash. 41, 279 Pac. 108. The facts in that case differ substantially from those in the case at bar. In its opinion, the court said:

"The loan association had actual knowledge of the fact that work had commenced several days before the mortgages were executed, and was in a position to fully protect itself and others by refusing to proceed with the loan, or by requiring releases to be obtained from all who had, by their labor and material, begun to improve the property. From a practical standpoint, at the time the inspection was made and the fact that the work was in progress was ascertained, the loan association was the only one who could have prevented the possibility of loss, and therefore, under well-settled principles of equity, having failed to do so, it should bear the loss."

We are wholly unable to follow appellants' theory that the agreement that the Varick Investment Company would build an apartment house on the lot it purchased from respondents, after subjecting that lot to a first mortgage lien for $35,000, necessarily resulted in a profit to respondents. True, there was evidence in the case that the lot was worth $12,000, and also evidence that the Varick Investment Company, after agreeing to improve the lot, paid $1,000 in cash and gave respondents a second mortgage for $14,750. Whether that second mortgage is worth more than $11,000 in cash, is problematical. Certainly, it does not follow that the agreement whereby the Varick Investment Company bought respondents' lot on credit and agreed to erect an apartment house, necessarily resulted in a profit to respondents.

In their attempt to establish the priority of their liens over respondents' second mortgage, appellants contend the Varick Investment Company was respondents' statutory agent for the purpose of establishing liens against the building. Rem. Comp. Stat., § 1129, provides:

" . . . every . . . person having charge of the construction . . . of any property subject to the lien . . . shall be held to be the agent of the owner for the purposes of the establishment of the lien . . ."

The Varick Investment Company was the owner, and also had charge of the construction of the property concerned in this litigation. The case of *Dahlman v. Thomas*, 88 Wash. 653, 153 Pac. 1065, relied upon by appellants to establish their contention, is not in point. Referring to the facts in that case, the court said:

"Turning to the present instance, the Mt. Baker Company gave an option on the property at $75,000, to Thomas and Clark, who in return obligated themselves

to begin mining with seventy-five shifts of labor per month, and to pay a royalty to the Mt. Baker Company of twelve and one-half per cent of the gross receipts, until they should have paid a first installment of $25,000 on the purchase price. This first payment they were not obligated to sooner than four years, yet the royalties were not to be deducted from the purchase price at all. The contract also provided for the usual forfeitures in case of failure either to pay royalties or to perform any other condition, and this forfeiture distinctly included the vendees' loss of all improvements and machinery by them installed. There was to be a bond against liens to the Mt. Baker Company. Finally, it was stipulated that the contract be recorded (which was done), and that a notice be posted upon the property, disclaiming in the name of the Mt. Baker Company that the latter was to be bound for liens, but stating that the occupants were Thomas and Clark under 'bond and lease'.''

The other cases relied upon by appellants to establish their contention that the Varick Investment Company was respondents' statutory agent for the purpose of establishing liens against the building, are likewise wholly different from the case at bar. They fail to persuade us that the liens of these appellants are prior and superior to respondents' second mortgage. In our opinion, the trial court did not err in holding the liens of these appellants were subsequent and inferior to respondents' second mortgage.

Appellant Howard H. Riley insists that, because he commenced his work before the date when respondents' second mortgage was filed for record, he is entitled to have his lien claim established as prior and superior to respondents' second mortgage.

When he sought the foreclosure of his lien for labor, he invoked the equity powers of the court. The evidence shows that he was the inspiration for the agreement resulting in the erection of the apartment house

against which labor and material liens were filed and foreclosed. With reference to the transaction between respondents and his brother, the principal stockholder and promoter of the Varick Investment Company, this appellant testified as follows:

"A. Well, we worked out to see if we could carry through a proposition. My brother was interested in it, and I outlined approximately what I thought that he should do. . . . Q. You saw the first mortgage people about the loan, did you? A. Yes, sir. Q. Did you have these sketches with you at that time? A. Yes. I submitted those sketches to them (the first mortgagee) . . . A. I secured the loan on those sketches and the outline specifications."

The testimony shows that appellant Howard H. Riley was one of the promoters of an inadequately financed undertaking. He testified that he engineered the deal for his brother, who was attempting to make money by erecting an apartment building with borrowed money on a lot that he purchased from respondents by paying only $1,000 cash and giving a second mortgage for $14,750. This appellant expected to make a substantial sum of money serving as architect, designing and supervising the erection of the building. He had notice of all the details of the agreement, having helped to bring it into existence for the financial good he hoped would result to himself and his brother.

He knew, when he started drawing the preliminary sketches, that the lot belonged to respondents, and that the financial success of his efforts depended upon getting respondents to sell their lot to the corporation which his brother was organizing, and upon persuading the first mortgagee to lend $35,000. Now that the scheme which he promoted has proven a financial failure, he seeks the foreclosure of his labor lien for services as an architect as a lien superior to respondents' second mortgage.

While a formal contract of employment of this appellant was entered into by the Varick Investment Company on May 9, 1929, and the second mortgage bears date May 10, 1929, it is clear from the testimony that the delivery of the second mortgage to respondents was part of the same business transaction as their transfer of title to the lot to the Varick Investment Company, and the execution and delivery of the first mortgage by the Varick Investment Company. This entire transaction was engineered by appellant Howard H. Riley. So far as respondents are concerned, he stood in the relationship of a promoter, rather than of a laborer.

The trial court did not err in adjudging the lien of Howard H. Riley as subject and inferior to respondents' second mortgage. There was no appeal from the allowance of the lien of Howard H. Riley.

Judgment affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and BEELER, JJ., concur.